McGirk, C. J.,
delivered the opinion of the Court.
This Was an action of assumpsit, brought by the defendants in error, on a promissory note, payable to them. Judgment was given in the Court below, for the plaintiffs in that Court; to reverse which, the plaintiff in error brought the cause here.
On the trial of this cause in the Court below, it was submitted to the Court, without a jury, on the pleas of non-assumpsit and payment. The defendant in that Court insisted that the plaintiffs were not entitled to maintain their action, unless they *21 produced to the Court a private act of the Legislature incorporating them, which was not done; or that they should show a public act of the Legislature to that effect, alledging no such act existed. The plaintiffs relied on what they called an act of the General Assembly of the Territory of Missouri, purporting to be passed at the December session, 1816, and approved by the Governor, January 31st, 1817, in the body of which it is declared to be a public act. The enrollment of this bill was signed by the Speaker of the House of Representatives; but the President of the Legislative Council never signed il.
The bill of exceptions made in this case, farther shows, that by the journal of the proceedings of the Council of that session, that, on the 6th January, 1817, the order of the day was called for; that thereupon a motion being made and seconded, the bill to incorporate the stockholders of the Bank of Missouri was taken up and read a third time; the bill was then stated by the President to be on its final passage, and on motion made and seconded, the question was put by the President: Will the House concur in passing the said bill ? which was carried in the affirmative.
It also appears, in the bill of exceptions, that on the 16th of January, Mr. Hunter, of the Joint Committee ot Enrollment, reported duly enrolled, "An Act to incorporate the Stockholders of the Bank of Missouri.”
On the 29th, same month, Mr. Hunter again reported said bill duly enrolled. It appeared, also, that the Council were informed, on the 29th of January, by message, that the .Speaker of the House of Representatives had, on the 15th of that month, signed said bill; and, also, it appeared, by the 7th joint rule of both Houses, when a bill was examined and reported duly enrolled, it should be signed first by the Speaker of the House of Representatives, and then by the President of the Council; by the 8th joint rule, it is made the duty of the Enrolling Committee, as soon as signed by the President, to refer the same to the Governor 1'or his approval or disapproval. And, also, these rules were not altered during progress of said bill, and the Governor approved said bill 31st January, same year, which was communicated to both Houses of the General Assembly.
It appeared, also, that after the passage of said bill, as above stated, and after the enrollment, as above stated, the President asked the question of the House, if he should sign said bill ? and the votes being equal on yeas and nays, the President voting also, no order was made.
That afterwards, and before the Governor’s approval, the' question was put by a member to the President, if he intended to sign said bill ? and was answered in the negative: and that the President instituted an enquiry, if Mr. Hunter was instructed to make his second report by the Committee of Enrolments; which was carried in the negative.
It appears, also, that on all tire questions put respecting this bill, after the passage as aforesaid, the votes stood 4 to 4. After the Governor approved said bill, the four members who voted against the President’s signing the bill, entered their protest, alledging the bill enrolled was not the same bill passed, because, they said, not duly enrolled; and, also, alledging it was not a law, unless signed by the President, as required by the joint rules. It appears by the Governor’s message, that the bill had been presented to him with satisfactory evidence of its having passed both branches of the General Assembly, and that he, having considered the same, approved it; but it does not appear by the record or journal, how the bill found its way to the Governor.
*22 On this state of the case, the plaintiff in error insisted in the Court below, that the Legislature of the Territory of Missouri had no power to create a corporation. And if they had had such power, they had not created the plaintiffs such by the pretended act, alledging the same had never legally passed, and was no act of the Legislature. Upon which the Court gave judgment for the Bank.
The error complained of, in this Court, is, that the record does not shew the plaintiffs below, incorporated, as they pretend they are ; and that the Circuit Court could not judicially know them as such; and that, therefore, judgment ought to have been against them; and that the Legislature could not make a corporation.
In pursuing this enquiry on the question, could the Legislature create a corporation ? this question was settled in the affirmative, this term, in the case Riddick, Chairman, v. 'Amelin, in the decision of which, only two judges were present; but now, the Court being full, all concur that the decision was right.
The next enquiry is, did the bill, entitled "An Act to incorporate the Stockholders of the Bank of Missouri,” pass both branches of the General Assembly within the meaning of the 4th section of the act of Congress, passed the 4th June, 1812, and was said act approved by the Governor, as required by said act of Congress, so that it became a public law ?
The 4th section of the act of Congress says, the Legislative power (in Missouri Territory) shall be vested in a General Assembly, which shall consist of the Governor, a Legislative Council, and a House of Representatives; and then, after giving a general grant of power to make laws, with some limitations, concludes thus: " all bills having passed by a majority in the House of Representatives and by a majority in the Legislative Council, shall be referred to the Governor for his assent; but no bill or legislative act, whatever, shall be of any force, without his approbation.” The 8th section of the act of Congress referred to, says: "the Legislative Council and House of Representatives, when assembled, shall each choose a Speaker, and its other officers, and determine the rules of its proceedings.” This is all that act, which was expressly passed for creating and erecting a Territorial form of government for Missouri Territory, says on the manner and form of making laws. Here it is contended, that the Legislature never did (although they passed the charter' in question) give it the finishing touch, which they themselves had previously determined it should receive before it left their hands. We will here premise what a law is: Sir William Blaclcstone says, it is a rule of action, prescribed by the supreme power m a Slate. The prescribing, says he, is making the determination or will of the legislator known. Where a Legislature consists of several persons, it becomes necessary, from that circumstance, that some rules should be made for the purpose of taking the sense and will of each member, whether the matter contained in a given proposition should be law, or a rule of action, of not. These rules may be, and always aré, according to their skill and judgment in choice — these rules are, and ought to be subservient to the end, to wit: Collecting the voice and determination of the Legislature on a given proposition: and when that sense is collected and declared by them, it forms what is called law-making; and when this is done, a statute or law' is said to be passed. In this case, it is not pretended that the bill, entitled " An Act to incorporate the Stockholders of the Bank of Missouri,” did not pass both Houses precisely as it ought to have done, but the objection comes afterwards. The journal bears evidence of the passage of the bill, and expressly says, it did pass. Now, according to the constitution of that General Assembly, what more was necessary? *23 It was insisted by the counsel for the plaintiff in error, that it was further necessary that the President should have signed it. It is always to he regretted, that a Legislature should he found diverting its attention from the end of its creation; and much more do this Court regret to find, from the journal of this Council, that one branch of the Legislature of an enlightened and liberal people, should be found equally divided, and one half determined to defeat this, or any other bill from being signed by the President and referred to the governor for his assent, when, at the same time, there was a standing rule, that he should sign every bill when reported duly enrolled. This Court is entirely at a loss to know what effect the President’s signature could have on this bill; and the defendant’s counsel only tell us, it would prove it had been acted on by that House, and was the same agreed «to. Be it so, no law of that Territory, nor rule of that House has ascribed to it that quality; but if it has this character, yet the journal must be better and higher testimony. The protest of one half of tile members against this act being a law, was not the act of the House, and can have no other effect than to shew, that, in all probability, the angry passions of men prevailed in an eminent degree in that branch of the Legislature, an event always to be deprecated in the worst of governments, and much more in the best.
This Court see enough on the record to sheyv the hill had passed by a majority in the House of 'Representatives, and by a majority in the Legislative Council, which are the inherent essential ingredients of a law made by a multitudinous Legislature, and thus far, precisely within the words of the act of Congress aforesaid. Then it was the duty of the Enrolling Committee to have the hill enrolled, and to report the fact to the respective Houses. It appears this was done; the report was made to the Council on the 16th January, and no objections at any time made and brought before the House, of the incorrectness of that report, and so it must be'taken to pe true, unless the contrary be shewn. Some objection was made to Mr. Hunter’s second report of the hill; but this second report was, as for any thing we can see, entirely out of order. Thus far, all appears to be regular. Then one of the rules required the Committee of Enrollments, as soon as.the hill was signed by the Speaker of the two Houses, to lay it before the Governor for his assent. This Committee would not have been culpable, as such, if they never presented any bill to the Governor till it was thus signed. This Court conceive the joint rule, which requires the signatures of the President and Speaker, were obligatory on them, and that those officers ought to have obeyed it, that the officer refusing was responsible to the Hduse of which he was a member, for the refusal, and the circumstances of that House not having the physical power to enforce obedience to its rules, malees no difference as to the legal light to do so. It has been shown that this bill passed by a majority in both Houses. What language does the 4th section of the act of Congress above cited command to be done, when that event takes place? It commands that a bill in that condition shall (speaking imperatively,) be referred to the Governor for his assent, and that no bill nor legislative act shall have any force without his assent. Here, the reference required by that act has taken place, and the assent has been given. This act of Congress does not say that such hill shall, even then, he a law, but it must he so in the nature of the thing itself, unless some other act, essential in its nature, or imposed by positive paramount law, is required to he done, without which the act would he unavailing. The 8th rule requires the President to sign the bill, and then does not say, if this is not done it shall not become a law. This rule is only directory to the officer for some purpose, this Court cannot exactly see what. We are *24 clearly of opinion, that tlie President could not, on that matter have a veto; and if this nile had went farther and declared that, without the President’s signature,» no hill should become a law, notwithstanding it might have all the other constitutional pioperties of a law, this Court doubt, exceedingly, if that rule would not have been void. Thus, this bill has been taken through all the legislative departments and branches of the Legislature, by the two first of which it has been passed by a majority, and the last assented to. This is exactly what the act of Congress requires. We cannot see what prevents it from being a law of that character which Courts, in this State, are bound to notice judicially.
Let the judgment of the Circuit Court be affirmed.